[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10298
_____

D.C. Docket Nos. 2:10-cv-00334-JES-SPC,
2:10-cv-00752-JES-SPC


PATRICK HURLEY,

                         Plaintiff - Appellee,

versus

KENT OF NAPLES, INC.,
a Florida Corporation,
KENT SECURITY OF PALM BEACH, INC.,
a Florida Corporation,
KENT SECURITY SERVICES, INC.,
a Florida Corporation,
GIL NEUMAN,
individually,

                         Defendants - Appellants,

ORLY ALEXANDER,
individually,

                         Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 20, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

COX, Circuit Judge:

The Plaintiff in this case, Patrick Hurley, sued the Defendants for violating the Family Medical Leave Act ("FMLA").  *See* 29 U.S.C. § 2615 (providing a cause of action for interfering with an employee's FMLA rights).  Hurley, who suffers from depression, contends that the Defendants wrongfully denied his request for eleven weeks of vacation time and terminated his employment.  The Defendants contend: that Hurley's request did not qualify for FMLA protection; and, that he was not terminated because he requested leave.  At trial, the jury found that Hurley was not terminated because he requested leave, but nevertheless awarded him $200,000 in damages.  On appeal, the Defendants contend that Hurley did not qualify for FMLA leave and that the jury returned a verdict inconsistent with the damage award.  Because we conclude that Hurley's requested leave did not qualify for FMLA protection, we need not reach the issue of whether the verdict is inconsistent with the damage award.

2

## I. Facts and Procedural History

Patrick Hurley began working for Kent of Naples, Inc., Kent Security Services Inc., and Kent Security of Palm Beach, Inc. in 2001 as the CEO of Kent of Naples, Inc. Defendant Gil Neuman serves as the Chief Executive Officer of Kent of Naples's parent company, Kent Security Services, Inc.[1] Defendant Kent Security of Palm Beach, Inc. is an affiliate of both companies.

The events at issue in this lawsuit began after Hurley had worked for the Kent companies for almost seven years. One night, Hurley sent Neuman an email with the subject line "Vacation Schedule."[2] In the email Hurley said, "attached is my vacation schedule going forward. The dates are subject to change." (Ex. 32 at 22.) The attached schedule listed eleven weeks of vacation over the next two

---

[1] 29 U.S.C. § 2611(4)(A)(ii)(I) defines an "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." The Eleventh Circuit has never specifically held that a private employee is individually liable under the FMLA. *Cf. Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1090 (11th Cir. 2013) (citing *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999)) (holding that public officials sued in an individual capacity were not employers subject to individual liability under the FMLA). Some of our sister circuits have held that the definition of "employer" imposes individual liability on private employees. *See, e.g.*, *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) ("If an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity."). Neuman does not contend that he is not an employer within the meaning of the statue.

[2] Hurley later testified that he meant this to be a medical leave request, not a vacation request, but he was embarrassed by his condition. (Tr. 658.)

3

years.   Neuman responded, "Your request has been denied, please schedule a meeting with me to discuss this further."  (*Id.*)

Dissatisfied with Neuman's response, Hurley replied that the "email below, which regards my upcoming vacation schedule, was not a request it was a schedule."   (Ex. 32.)   Hurley also claimed that "I have been advised by medical/health professionals that my need to avail myself of vacation time that I have earned is no longer optional."  (*Id.*)  Although not mentioned in the email, Hurley had been suffering from depression and anxiety which produced panic attacks.  Hurley closed the letter by accusing Neuman of failing to pay him an overdue bonus and privately ridiculing his ideas.

Neuman called Hurley the next day to discuss the email.  The parties dispute what happened next.  Hurley said that during this conversation he explained his medical condition and need for leave.  Neuman denies that Hurley mentioned his medical condition.   Regardless, both parties agree that Neuman terminated Hurley's employment.  Neuman said that he terminated Hurley for insubordinate behavior and poor performance.

A week after his termination, Hurley visited his doctor, Carlos Paisan.  Dr. Paisan filled out a FMLA form for Hurley, despite knowing that Hurley had already been terminated.  In the form, Dr. Paisan noted that Hurley suffered from

4

depression and had received treatment for his condition.  But, Dr. Paisan also noted that he could not determine the duration and frequency of any incapacity.[3]

As a result of these events, Hurley filed this suit in the district court.  The complaint alleged two counts.  First, Hurley asserted an interference claim.  Hurley alleged that the Defendants "interfered with the exercise of Plaintiff's right to unpaid leave, because Defendants terminated Plaintiff's employment as a result of Plaintiff's exercising his right to FMLA leave."  (R. 1 at ¶29.)  Second, Hurley also asserted a retaliation claim.  Hurley alleged that the "Defendants discriminated against Plaintiff for exercising his right to leave, because Defendants terminated Plaintiff's employment as a result of Plaintiff's exercising his right to FMLA leave."  (R. 1 at ¶40.)  In relation to both counts, Hurley contended that he suffered from a serious medical condition.  But, Hurley never alleged that he was unable to work or incapacitated.

Hurley moved for summary judgment on liability in the case, and the Defendants moved for summary judgment on all issues.  The Defendants acknowledged that Hurley suffered from depression, but contended that Hurley's leave request was not protected under the FMLA because it was for vacation and

---

[3] "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113.

Hurley did not have any period of incapacity. Hurley responded that his leave was protected because he had a "chronic serious health condition."

The district court determined that there was a material factual dispute in the case and denied both summary judgment motions. The district court decided that some evidence supported a finding that Hurley suffered from a "chronic serious health condition," but never considered whether the leave Hurley requested was for a "period of incapacity or treatment for such incapacity."

The case proceeded to trial before a jury on Hurley's interference and retaliation claims. In the Joint Pretrial Statement, Hurley requests damages of $451,859.94 in back pay, $451,859.94 in liquidated damages, and $2,962,399 in front pay. All of the damage calculations were based on Hurley's alleged wrongful termination. Hurley did not contend that he suffered any other damages.

At trial, the bulk of the evidence centered on the nature of the leave Hurley planned to take and whether he would be incapacitated. Even though Dr. Paisan filled out Hurley's FMLA form, he testified that he did not mean to imply that Hurley needed medical leave for the dates in the schedule that Hurley sent to Neuman. Instead, Dr. Paisan testified he had never even seen the schedule Hurley submitted and would not have certified FMLA leave for any future dates.

6

While Hurley maintains that he requested leave for medical reasons, he testified that he and his wife picked the leave days without any input from a healthcare professional.  And, Hurley intentionally selected leave dates to overlap with holiday weekends.  According to Hurley, his "leave was not intended to predict" when he would be incapacitated because he "just never knew when [he] was going to have an episode or when the panic attacks would come."  (Tr. 768.)

Hurley acknowledged that he did not have any doctor's appointments for these dates.  But, Hurley maintained that he planned to schedule treatment as the dates for leave approached.  Hurley testified that, had his leave request been granted, he intended to talk to his medical team about "things [he] could do during these times that would help [him] get better."  (Tr. 762.)  According to Hurley, he viewed normal vacation activities, like visiting the Grand Canyon, as things that would help him get better.  Finally, despite claiming that the vacation schedule he sent to Neuman was "FAR less aggressive than I have been advised to take," Hurley admitted that no doctor told him to take a specific amount of vacation time.

Hurley's counselor, Fred Stuart, also testified about Hurley's leave request.  In the past, Stuart had told Hurley that he needed to get away from work.  But, Stuart also testified that he was not telling Hurley to take medical leave.  Rather,

7

Stuart testified there was a difference between Hurley taking time off work to improve his health and necessary medical leave because he could not work.

At the close of Hurley's case, the Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Defendants contended that although Hurley had a chronic serious health condition, there was no evidence that the leave he requested was for a period of incapacity. The district court denied the motion for judgment as a matter of law and the trial continued.

At trial, the jury returned a puzzling verdict. The jury found that Hurley suffered from a "serious health condition," that he was an "eligible employee" for FMLA leave, and that he gave proper "notice" under the FMLA. (R. 135 at 1–2.) Then the jury answered the following three questions:

4. That the Plaintiff was entitled to an FMLA benefit denied by Defendant? Answer Yes or No
    Jury: YES

5. That the Plaintiff's request for leave was a substantial or motivating factor that prompted the Defendant to terminate the Plaintiff's employment? Answer Yes or No
    Jury: NO

6. That the Plaintiff should be awarded damages for actual monetary losses sustained as a direct result of the Defendant's action? Answer Yes or No
    Jury: YES

If your answer is Yes, in what amount
    Jury: $200,000.00 (R. 135 at 2.)

8

Hurley had presented no basis at trial for an award of damages except for his termination. Problematically, the jury's verdict found that Hurley's leave request did not cause his termination, but awarded damages for his termination anyway. So, the jury's verdict on Hurley's termination appeared to be inconsistent with the damage award.

After the verdict, the Defendants renewed their motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), on the ground that Hurley's leave request did not qualify for protection under the FMLA. The district court denied the motion. The Defendants also moved for a new trial or remittur based on the jury's inconsistent verdict. The district court denied the motion for a new trial and took the motion for remittur under advisement.

Later, the district court denied the motion for remittur after determining that the jury's verdicts were not inconsistent. The court's rationale for this decision is unclear.[4] The court then entered judgment in favor of Hurley on the interference claim awarding actual damages of $200,000, liquidated damages of $200,000, and

---

[4] The district court reasoned that "[t]he Court rejects Defendants' position that because the Jury responded in the negative to the interrogatory concerning whether Plaintiff's request for leave was a substantial or motivating factor that prompted the Defendant to terminate Plaintiff's employment, the Jury necessarily found that Defendants terminated Plaintiff for legitimate reasons and not in conflict with the substantive rights under the FMLA. The Jury made no specific finding that the discharge would have occurred regardless of Hurley attempting to exercise his FMLA rights." (R. 142 at 5.)

front pay of $353,901.85.[5]   After the Defendants filed their notice of appeal, the district court also awarded $233,109.75 in attorney fees and $21,329.36 in costs, making the total award against the Defendants $1,008,340.96.

## II. Issues Presented and Standard of Review

The Defendants present two issues for review: (1) whether the district court erred by denying their renewed motion for judgment as a matter of law, and (2) whether the district court erred by entering a judgment for $200,000 in actual damages for backpay, $200,000 in liquidated damages, and $353,901.85 in damages for front pay.   We review the district court's denial of a motion for judgment as a matter of law de novo, considering the evidence in the light most favorable to the non-moving party.   *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004).   Because we conclude that Hurley's request did not qualify for FMLA leave as a matter of law, we need not reach the Defendants' second issue.

---

[5] In deciding whether to award front pay, the district court first determined whether reinstatement was possible. (R. 143 at 3.)  The court found that reinstatement was not feasible because Hurley may face hostility as a result of this litigation. (*Id.* at 4.)  After determining that reinstatement was not possible, the court decided to award front pay without further elaboration and calculated the amount based on continued employment for three years.  While we have no reason to consider the issue of front pay in this case, we note that the district court's entire decision was based on a test created by a district court in the Northern District of Iowa.  *See Dollar* v. *Smithway Motor Xpress, Inc.*, 787 F. Supp. 2d 896 (N.D. Iowa 2011).  The decision the district court relied on has since been criticized and vacated in part by the Eighth Circuit.  *Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 810 (8th Cir. 2013).

10

## III. Discussion

**A.    The district court erred by denying the Defendants' renewed motion for judgment as a matter of law because Hurley's request did not qualify for leave under the FMLA.**

The Defendants contend they were entitled to judgment as a matter of law on both Hurley's interference claim and his retaliation claim because Hurley's requested leave did not qualify for protection under the FMLA. In response, Hurley does not contend that his leave actually qualified under the FMLA. Instead, Hurley challenges the legal standard and contends that he can bring a claim under the FMLA without actually qualifying for leave because he provided sufficient notice to the Defendants of his intention to take leave (Hurley's Br. at 24–28,) and only had to "potentially qualify" for FMLA leave. (Hurley's Br. at 28–31.) Alternatively, Hurley contends that the Defendants are not entitled to judgment as a matter of law because their actions cannot be justified by subsequently discovered evidence (Hurley's Br. at 31–35.) and because his intention to plan medical treatments precludes granting the Defendants' motion. (Hurley's Br. at 35–42.) In reply, the Defendants reassert that an employee must actually qualify for FMLA leave in order to bring an interference claim or retaliation claim. (Defendants' Reply Br. at 8.)

11

**1.    An employee must actually qualify for FMLA leave in order to assert an interference or retaliation claim.**

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hulbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)(D)).  To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation.  *Id.*  To assert a claim for interference under the FMLA, an employee must be "entitled to the benefit denied." *Id.*  To assert a retaliation claim, the employee must show—among other elements—that "he engaged in statutorily protected activity." *Id.* at 1297.  As we have previously held, both causes of action require the employee to establish that he qualified for FMLA leave.  *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (holding that both interference and retaliation claims require the employee to establish qualification for leave).

First, we find unconvincing Hurley's argument that he only needed to provide notice of potentially qualifying leave.  We agree with Hurley that the evidence supported a finding that he provided sufficient notice.  Under the FMLA, an employee is required to provide notice when the need for leave is foreseeable.

12

29 U.S.C. § 2612(e).  That said, notice is only relevant to an FMLA claim if the noticed leave is protected by the FMLA.  Giving an employer notice of unqualified leave does not trigger the FMLA's protection.  Otherwise, the FMLA would apply to every leave request.

Second, Hurley's argument that an employee only needs to "potentially qualify" for leave to assert an interference claim is incorrect.  The plain text of the statute provides a cause of action against employers who "deny the exercise of or the attempt to exercise, any *right* provided under this subchapter."  29 U.S.C. § 2615(a)(1) (emphasis added).  Nothing in the statute speaks of "potential rights." Furthermore, Hurley cites no precedent supporting his "potentially qualifying" standard.  In his brief, Hurley quotes 29 C.F.R. 825.208, but the citation does not include the text Hurley quotes and speaks of leave for airline employees.[6]  The case Hurley cites discusses the unrelated issue of what type of notice an employee must provide an employer when requesting FMLA leave.  *See Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("Once an employee gives sufficient *notice* to her employer that potentially FMLA-qualifying leave is needed,

---

[6] The quotation appears to instead come from 29 C.F.R. § 825.301(b).  This section reads in part, "[a]n employee giving *notice* of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her *obligation to provide notice*, though the employee would *need to state a qualifying reason* for the needed leave…"  29 C.F.R. § 825.301(b) (emphasis added).  Plainly, this regulation applies to notice.  Even then, the regulation requires a "qualifying reason," not a "potentially qualifying" reason.

13

the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection.") (emphasis added).  And, in *Cruz* we specifically noted that an employee must actually qualify for FMLA leave in addition to providing appropriate notice to assert a valid interference or retaliation claim.  *Id*.

## 2.    Hurley has not shown that his request qualified for protection under the FMLA.

Hurley's brief on appeal does not directly respond to the Defendants' contention that he did not qualify for FMLA leave.  But, Hurley contended in the district court that his leave was protected because he had a chronic condition within the meaning of 29 C.F.R. § 825.115.  This section provides leave for any "period of incapacity or treatment for such incapacity due to a chronic serious health condition."  29 C.F.R. § 825.115(c).  The Defendants contended that Hurley had not established the requisite period of incapacity.  Hurley never clearly addressed this argument in the district court, but rather emphasized that his leave should have been granted because he had a chronic condition and the leave would have been beneficial.

Among other provisions not relevant to this case, the FMLA protects leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  One type of "serious health condition" in the regulations is a

14

"chronic health condition." 29 C.F.R. § 825.115. But, the FMLA does not extend its potent protection to any leave that is medically beneficial leave simply because the employee has a chronic health condition. Rather, the FMLA only protects leave for "[a]ny *period of incapacity* or *treatment for such incapacity* due to a chronic serious health condition." 29 C.F.R. § 825.115(c) (emphasis added); *see also* 29 U.S.C. § 2612(a)(1)(D) (providing leave for serious health conditions that make the employee unable to perform job functions). The regulations define "incapacity" as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113.

Hurley admits that his leave was not for a period of incapacity. (Tr. 768.) And, Hurley does not contend that his leave would have been "treatment for such incapacity."[7] In fact, Hurley testified that he could not predict any periods of incapacity from his condition. (Tr. 768.) Accordingly, Hurley has not met his burden of proving that his leave request qualified for protection under the FMLA.

---

[7] Hurley would not necessarily have to be currently experiencing a period of incapacity at the leave dates to qualify under the FMLA. But, he would have to be receiving treatment for a previous period of incapacity. *See Russell v. North Broward Hosp.*, 346 F.3d 1335, 1339 (11th Cir. 2003) ("[A]ny subsequent treatment or period of incapacity relating to the same condition that caused the initial qualifying period of incapacity of more than three days is protected under the Act.") (quotation marks omitted).

15

**c.    Neither of Hurley's other contentions preclude judgment as a matter of law.**

Turning to Hurley's other arguments; neither precluded granting the Defendants' motion for judgment as a matter of law.  First, Hurley contends that the Defendants' motion cannot be supported by evidence acquired during litigation.  However, the cases Hurley cites only state that an *employment decision* cannot be *motivated* by evidence that the decision maker did not have at the time of termination.  *See, e.g.*, *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004).  The issue before us is not the motivation for an employment decision.  Rather, we are only concerned with whether Hurley met the statutory qualifications for leave.  To that end, the Defendants can use evidence discovered during litigation to support their contention that Hurley was not qualified for leave under the FMLA.

Second, Hurley contends that his intention to plan treatments during his leave and public policy precluded granting Defendants' motion for judgment as a matter of law.  In reviewing a motion for judgment as a matter of law, we view the facts in the light most favorable to Hurley and take as true that he intended to plan treatments.  But, as previously mentioned, Hurley never asserts or explains how these planned treatments alone made his leave request FMLA qualifying.  To qualify for leave under the FMLA, Hurley would still have to establish a period of

16

incapacity. *See* 29 U.S.C. § 2612(a)(1)(D). We also find Hurley's appeal to public policy unconvincing. When addressing a clear statute, this court's task is to accurately apply that statute to the case at bar, not to distort the meaning of the statute to comport with our ideas of sound public policy.

Accordingly, the district court erred by failing to grant Defendants' motion for judgment as a matter of law on both the interference claim and the retaliation claim. We reverse and grant the Defendants' renewed motion for judgment as a matter of law. Because this motion resolves both of Hurley's claims in the Defendants' favor, we need not address the second issue of the inconsistencies in the jury's verdict.

## IV. Conclusion

The district court erred by denying the Defendants' motion for judgment as a matter of law on both of Hurley's claims because Hurley was not eligible for leave under the FMLA. Accordingly, the Defendants are entitled to judgment as a matter of law on all claims. We reverse the district court's order on the motion for judgment as a matter of law and vacate the district court's judgment. We remand with instructions for the district court to vacate its order awarding attorney fees and to enter judgment in favor of the Defendants.

REVERSED, VACATED, AND REMANDED WITH INSTRUCTIONS.

17

HULL, Circuit Judge, specially concurring:

I concur in only the judgment in the majority opinion. I would reverse because the jury's answer to Question 5 required entry of judgment for the defendants as a matter of law.

At Question 5, the jury found that Hurley's "request for leave was [not] a substantial or motivating factor that prompted the Defendant[s] to terminate [Hurley's] employment[.]" The jury's answer to Question 5 was a finding that Hurley was terminated for some reason unrelated to his request for leave. And that termination occurred on May 1, 2008, which was well before the first day of Hurley's proposed FMLA leave (May 21, 2008).

This finding doomed both Hurley's FMLA discrimination claim and his FMLA interference claim. This conclusion follows from our precedent. In Krutzig v. Pulte Home Corp., 602 F.3d 1231 (11th Cir. 2010), this Court affirmed an award of summary judgment to an employer in an FMLA case. Id. at 1233. Plaintiff Krutzig alleged that she was fired after she requested FMLA-protected medical leave for foot surgery. Id. at 1233–34. She brought FMLA retaliation and interference claims. Id. at 1234. At summary judgment, the defendant-employer proffered evidence that Krutzig's termination was unrelated to her request for medical leave, and the plaintiff did not rebut this evidence. Id. The district court

18

granted summary judgment as to both FMLA claims, and we affirmed. Id. at 1233–34.

As for the interference claim, we acknowledged that Krutzig's burden was only to show that she was entitled to and denied an FMLA benefit. Id. at 1235. However, we went on: "the right to commence FMLA leave is not absolute, and . . . an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." Id. at 1236. Because the unrebutted evidence showed that "Krutzig's termination was for reasons other than her requested leave," the defendant was entitled to summary judgment on the interference claim, regardless of Krutzig's having established a prima facie case for interference. Id.

Krutzig therefore makes clear that when an employee brings an FMLA interference claim alleging that the employer interfered with her FMLA rights by terminating her (as opposed to by taking some other act like simply denying the requested medical leave), the employer can overcome a prima facie case of interference by showing that it terminated the employee for some reason not related to the requested medical leave. See id.; see also Spakes v. Broward Cnty. Sheriff's Office, 631 F.3d 1307, 1310 (11th Cir. 2011) ("If an employer

19

demonstrates that it would have discharged an employee for a reason wholly unrelated to the FMLA leave, the employer is not liable under the FMLA for damages . . . ." (internal quotation marks omitted)).  Based on the unique facts of this case—where the jury found the termination occurred for an unrelated reason, before the first day of the proposed FMLA leave—the defendants were entitled to judgment as a matter of law.