(945 P.2d 418)
No. 76,817

DUANE D. WELLS, *Appellant*, v. STATE BANK OF KINGMAN, *Appellee*.

Opinion filed September 26, 1997.

*Calvin McMillan*, of Kaplan, McMillan & Harris, of Wichita, and *Theodore C. Geisert*, of Geisert, Wunsch & Watkins, of Kingman, for appellant.

*David D. Gaumer*, of Gaumer & McClellan Law Offices, of Kingman, for appellee.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., of Topeka, for *amicus curiae* The Kansas Bankers Association.

Before GERNON, P.J., ELLIOTT, J., and THOMAS H. BORNHOLDT, District Judge, assigned.

ELLIOTT, J.: Duane E. Wells sued the State Bank of Kingman (Bank), claiming the Bank breached an oral agreement to extend loans to Wells pursuant to a comprehensive Farm and Home Plan entered into between Wells and the Farmers Home Administration (FmHA). The trial court granted summary judgment in favor of the Bank, ruling that Wells' claim was barred by the statute of frauds, K.S.A. 16-118.

Wells appeals and we affirm. The trial court permitted Wells to file an amended petition alleging fraud. On that claim, the jury returned a verdict in favor of the Bank; no appeal has been perfected with respect to the verdict.

Wells met with Mark Baker of FmHA concerning a Farm and Home Plan, which provided that Wells would sell his cow herd and run additional cattle in the winter and summer of future years. Baker discussed the plan with Scott Lawrence of the Bank.

Lawrence indicated the Bank would be willing to advance funds for stocker cattle, but might apply for a guaranteed line of credit.

Lawrence told Baker the Bank would extend credit to Wells for stocker cattle in an amount the Bank thought Wells could handle, but possibly not as much as Wells proposed. Baker told Lawrence that FmHA would need a written commitment from the Bank.

In a letter to Wells with a copy to the Bank, FmHA set out loan conditions, including:

"1. Provide written verification from Kingman State Bank that they will provide credit for stocker calves and crop input expenses as called for in the Farm and Home Plan, guaranteed or non-guaranteed, on a year by year basis, and that they will release their lien on all farm machinery, equipment and vehicles (including titles) upon receipt of a large principal reduction (expected to be approximately $70,000) of your debt with them via FmHA loan funds."

The Bank never provided any written verification that it would extend credit to Wells for stocker cattle, nor did Wells ever request the written verification. FmHA apparently overlooked the lack of written verification and approved the loan; the Bank received some $70,000 of the loan proceeds. Later, Wells requested the Bank to advance $200,000 on an open line of credit. When the Bank refused, this lawsuit followed.

K.S.A. 16-118(a) prohibits a debtor or creditor from maintaining an action on a credit agreement unless the agreement is in writing and signed by the creditor and debtor. A "credit agreement" is an agreement by a financial institution to lend or delay repayment of money, to otherwise extend credit, or to make any other financial accommodation. K.S.A. 16-117(a).

The statutes were enacted in 1988 in an apparent attempt to limit "lender liability" claims based on alleged oral agreements between borrowers and financial institutions. K.S.A. 16-118(a) essentially operates as a statute of frauds. See Calvert, *Kansas Legislation Governing Credit Agreements of Financial Institutions*, 59 J.K.B.A. 19, 21 (Feb./March 1990).

While our appellate courts have yet to interpret these statutes, this application seems straightforward enough to us. And in the present case, the parties do not dispute that K.S.A. 16-118(a) applies. Rather, Wells contends his partial performance of the agree-

ment between him and FmHA removes the case from the statute's operation.

Before partial performance can be invoked to escape the operation of the statute of frauds, the contract must be fully made in every respect, except for an actual writing. See *Owasso Dev. Co. v. Associated Wholesale Grocers, Inc.*, 19 Kan. App. 2d 549, 873 P.2d 212, *rev. denied* 255 Kan. 1003 (1994). Here, the trial court found the terms and conditions of any contract between Wells and the Bank were never fixed. Further, the trial court found that Wells did not come into court with clean hands, in that he violated his plan with FmHA in several respects.

In the present case, the Bank was not a party to the Farm and Home Plan proposed by Wells and FmHA. Simply put, Wells failed to obtain the written verification from the Bank demanded of him by FmHA.

We note the Kansas Bankers Association's argument in its *amicus* brief is technically correct that the partial performance doctrine applies only to contracts involving land. But Wells' theory may as easily be labeled one of promissory estoppel, which is not limited to contracts involving land. See *Decatur Cooperative Association v. Urban*, 219 Kan. 171, 547 P.2d 323 (1976).

Even viewing the facts in a light most favorable to Wells, the trial court's decision was correct. See *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 239, 865 P.2d 182 (1993). While the Bank was aware of the terms of the plan between Wells and FmHA, it was not a party to that agreement. In fact, the Bank expressed reservations about whether it would advance credit in the amount Wells proposed in the plan. If Wells had obtained the written verification required of him, this litigation could have been avoided. That FmHA closed the loan without getting written verification from the Bank cannot be attributed to any fault of the Bank.

We understand Wells' frustration, but under the law, the trial court properly granted summary judgment to the Bank.

Affirmed.